IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No.: 11-33443-H3-7 |
| | § | |
| TOTAL SEPARATION SOLUTIONS, LLC | § | (Chapter 7) |
| | § | |
| Debtor. | § | |

**TRUSTEE'S AMENDED EMERGENCY MOTION TO (i) APPROVE
LIQUIDATION AGREEMENT AND (ii) COMPROMISE
<u>CONTROVERSY WITH SECURED CREDITORS</u>
(AMENDS DOCKET #29)**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY CONSIDERATION IS REQUESTED.

*AN EMERGENCY HEARING HAS BEEN SET FOR MAY 26, 2011 AT 10:00 AT 515 RUSK, 4TH FLOOR, HOUSTON, TEXAS (JUDGE PAUL'S COURTROOM)*

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Janet S. Northrup, chapter 7 Trustee (the "Trustee") in the above-captioned case, files her

*Motion to (i) Approve Liquidation Agreement and (ii) Compromise Controversy With Secured*

*Creditors* (the "Motion"), seeking court approval of a Liquidation Agreement and settlement of disputed claims against alleged secured creditors.

**RELIEF REQUESTED**

1. The Trustee seeks approval of a Liquidation Agreement with Shell Technology Venture Fund 1, B.V. ("STVF1") and Total Separation Solutions Holdings, L.L.C. ("TSS Holdco") [collectively the "Secured Creditors"] and resolution of disputed claims regarding the extent, validity and priority of debt and security interests of the Secured Creditors and disputed claims to recharacterize alleged debt to equity. Subject to court approval, under the terms of the Liquidation Agreement attached as Exhibit "A" (the "Liquidation Agreement") the Trustee (i) will liquidate certain assets claimed as collateral by the Secured Creditors, with a portion of the proceeds accruing to the benefit of the bankruptcy estate and (ii) agree to certain amounts of secured debt, unsecured debt and subordinated debt. The Trustee also seeks approval to pay rentals on the Debtor's leased real estate where much of the physical Collateral (described below) is stored. These funds are held at Amegy Bank and are subject to a valid first lien in favor of STVF1. STVF1 has agreed to release its lien on, and to pay these rentals, in the sum of approximately $16,000.

**BACKGROUND**

2. On April 19, 2011, Total Separation Solutions, L.L.C. (the "Debtor") filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code. The Trustee is the duly appointed and serving trustee of the Debtor's bankruptcy estate.

3. The Debtor scheduled Amegy Bank of Texas with secured debt totaling approximately $3.2 million. A review of the Texas Secretary of State records and documents obtained from Amegy discloses that Amegy had filed a pre-petition "blanket lien" on all assets

of the Debtor, save and except certain intellectual property assets (the "IP Assets"). The Debtor also scheduled TSS Holdco with secured debt totaling almost $29 million. A review of the Texas Secretary of State records and documents obtained from TSS Holdco discloses that TSS Holdco had filed a pre-petition "blanket lien" on all assets of the Debtor, but was subordinated to Amegy on all assets save and except the IP Assets.

4. STVF1 was a guarantor of the Amegy debt, and has now acquired the Amegy notes and liens. The Trustee's counsel has reviewed voluminous documentation from Amegy, STVF1 and TSS Holdco regarding the debt and the alleged security interests. The Trustee has considered the viability of litigation against TSS Holdco for recharacterization of its alleged debt to equity in light of the investigation conducted by her counsel. STVF1, as successor to Amegy, and TSS Holdco have requested that the Trustee assist in liquidating the assets claimed by them as collateral (the "Collateral"), and the Trustee has agreed to do so under the terms of the Liquidation Agreement.

5. The terms of the proposed Liquidation Agreement are summarized as follows:

   a) The Trustee will sell or collect the Collateral free and clear of all liens, claims, charges, encumbrances and interests under 11 U.S.C. §363, with the consent of the Secured Creditors, on the timetables set forth in the Liquidation Agreement.

   b) All expenses of collecting or selling the Collateral and all administrative taxes of the estate (if any) will be paid from the proceeds of sale. Up to a limit of $65,000, other administrative expenses (save and except those for investigating or prosecuting chapter 5 claims and selling unencumbered assets) will also be paid from the proceeds of sale of the Collateral.

   c) STVF1, as successor to Amegy, will have a valid claim of debt in an amount not to exceed $3,243,578.06, subject to reduction for accounts receivable collected by Amegy and delivered to STVF1 through May 17, 2011. To the extent Amegy was properly and unavoidably perfected in the Collateral as of the petition date, STVF1's debt will be secured.

d)     TSS Holdco will have valid debt claims of (i) $5 million which will be secured to the extent TSS Holdco was properly and unavoidably perfected in the Collateral as of the petition date; (ii) approximately $3.2 million which will be a general unsecured claim; and (iii) approximately $12.5 million which will be subordinated to the claims of general unsecured creditors.

e)     After payment of the expenses noted in paragraph (b):

    (i)     The Secured Creditors will receive 80% of the first $3.5 million of the net proceeds from the sales or collection of Collateral, and the bankruptcy estate will receive 20%;

    (ii)     The Secured Creditors will receive 70% of the net proceeds from the sales or collection of Collateral in excess of $3.5 million but not in excess of $6 million, and the bankruptcy estate will receive 30%; and

    (iii)     Up to the balance of their secured claim remaining after application of the payments under subparagraphs (i) and (ii), the Secured Creditors will receive 60% of the net proceeds from the sales or collection of Collateral in excess of $6 million, and the bankruptcy estate will receive 40%.

f)     The Trustee will waive her right to seek recharacterization of the Secured Creditors' debt to equity; and the Secured Creditors will waive all claims against the bankruptcy estate except as provided under the terms of the Liquidation Agreement.

## ARGUMENT AND AUTHORITIES FOR COMPROMISE

6.     FED. R. BANKR. P. 9019 governs compromises with the trustee. An analysis of the factors in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), will aid the court's decision in granting the compromise. The factors include: (i) the probability of success in the litigation, (ii) difficulty of collection of any judgment, (iii) the complexity of the litigation; and (iv) deference to the concerns of creditors. These factors will each be addressed in the paragraphs below.

7.     **Factor 1: Probability of Success.** The Trustee believes litigation to recharacterize debt to equity would be possible for the debt other than the Amegy debt acquired

by STVF1. However, a number of the factors considered by the courts in recharacterization cases militate in favor of the advances at issue in this case being characterized as true debt. TSS Holdco has presented the Trustee with written promissory notes, security agreements, amendments to security agreements, and UCC filings – all of which are indicative of debt. The Trustee's professionals have reviewed the Debtor's tax returns for 2006 through 2009, and the alleged debt of TSS Holdco (or it predecessor-in-interest) is characterized as debt. While the Trustee believes a significant argument can be made that the alleged $29 million is not debt but rather equity, the probability of success on the merits is questionable. After consideration of the terms of the Liquidation Agreement, the Trustee believes that the compromise between the Trustee and the Secured Creditors is reasonable under the circumstances.

8.  **Factor 2: Difficulty of Collection.** Were the Trustee to succeed in recharacterizing debt as equity, the assets claimed as Collateral would be free and clear, so "collection" would not be difficult.

9.  **Factor 3: Complexity of the Litigation.** Litigation to recharacterize the alleged debt as equity would involve extremely complex legal, accounting, and factual issues. The Trustee's professionals have already reviewed several thousand pages of documents. Given the complexity and the volume of transactions at issue, litigation costs could easily exceed $75,000 to $100,000.

10. **Factor 4: Deference to Creditors.** The Trustee submits that the compromise of this dispute is beneficial to the estate in that the settlement avoids the expense and uncertainty of litigation. This Motion will be served on creditors for any comments or objections they may have.

11. Pursuant to her business judgment, the Trustee submits that the Liquidation Agreement and the compromise of disputed claims contained therein is beneficial to the estate in that (i) it provides a procedure for liquidation of Collateral with a return to the estate; and (ii) the settlement avoids the expense and uncertainty of litigation.

12. This Motion and all of the prior communications between the Trustee and the Secured Creditors, and their respective representatives, are subject to Rule 408 of the Federal Rules of Evidence.

## REQUEST FOR EMERGENCY CONSIDERATION

13. The Collateral (other than accounts receivable) is located on leased premises in three different states: Texas, Kentucky and West Virginia. Rent on these premises is paid through May 31, 2011. The Trustee has begun preliminary discussions with auctioneers to obtain proposals for liquidation of the tangible Collateral, but cannot make any commitments or seek court authority to employ an auctioneer and sell the tangible Collateral until the Liquidation Agreement is approved.

14. The Secured Creditors have indicated they will advance funds to pay the June rent (over $14,000), but the Secured Creditors will be entitled to seek reimbursement of these funds from the sales proceeds. Given the proposed division of proceeds after payment of such expenses, the Secured Creditors will essentially bear 80% of these costs and the estate will bear 20%.

15. To finalize arrangements to either move the tangible Collateral to an auction site or conduct on-site auctions before the end of June, with proper notice, the Liquidation Agreement must be approved well before the end of May. If the Liquidation Agreement is not approved before the end of May, the Secured Creditors and the estate may be required to pay rent for July on the three leased premises, to the detriment of the unsecured creditors who will benefit from the net proceeds of the sales.

16. For these reasons, the Trustee requests that the court give expedited consideration to this Motion so the return to unsecured creditors from the sales of the tangible Collateral can be maximized.

### Certification

17. Pursuant to Local Rule 9013(i), the undersigned, counsel for the Trustee, certifies that this motion and the grounds set forth for emergency consideration are accurate, to the best of her information and belief, after diligent inquiry and investigation.

WHEREFORE, PREMISES CONSIDERED, Janet S. Northrup, Chapter 7 Trustee, prays that the court grant this Motion and approve the Liquidation Agreement and the compromise of the controversy between the parties on substantially the same terms as set out in the Liquidation Agreement attached hereto as Exhibit "A", authorize the parties to take all actions and execute all documents necessary to effectuate the Liquidation Agreement and the compromise, and for such other relief as the court finds appropriate and just to grant.

Respectfully submitted,

/s/ Wayne Kitchens
Wayne Kitchens   TBN: 11541110
wkitchens@hwa.com
Rhonda R. Chandler   TBN: 04101600
rchandler@hwa.com
HUGHESWATTERSASKANASE, LLP
333 Clay Street, 29th Floor
Houston, Texas 77002-4168
Telephone: 713-759-0818
Facsimile: 713-759-6834
**PROPOSED ATTORNEYS FOR JANET S. NORTHRUP, CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

Pursuant to Local Bankruptcy Rule 9013-1, I hereby certify that I served a true and complete copy of the foregoing on all parties shown on the attached Service List, by first class mail and/or ECF on May 24, 2011.

/s/ *Wayne Kitchens*
Wayne Kitchens

## AGREEMENT TO LIQUIDATE COLLATERAL

Subject to bankruptcy court approval, the Effective Date of this Agreement is May 17, 2011 (the "Effective Date"). Shell Technology Ventures Funds 1 B.V., a Netherlands registered company ("STVF1"), as successor by assignment from Amegy Bank, N.A., and Total Separation Solutions Holdings LLC, a Delaware limited liability company ("TSS Holdco"), and/or their successors and assigns (collectively the "Secured Creditors") agree with the Janet Northrup, Trustee (the "Trustee") of the bankruptcy estate of Total Separation Solutions, L.L.C. (the "Debtor") as follows:

1. *Liquidation of Collateral.* Secured Creditors agree to allow the Trustee to sell, free and clear of all liens, claims, charges, encumbrances and interests under 11 U.S.C. §363, all or any part of the collateral in which the Secured Creditors claim a security interest (the "Collateral") according to the following, or such other deadlines as the Secured Creditors and the Trustee may mutually agree, provided, however, nothing in this Liquidation Agreement shall be construed to impose an obligation on the Trustee to undertake to dispose of any Collateral which has been or will be abandoned by the Trustee:

    a. *Intellectual Property.* One or more Motions to Sell all or part of the intellectual property Collateral (wherever located) to be filed with the bankruptcy court within 120 days from the Petition Date; provided however the Secured Creditors shall provide the Trustee with a list of intellectual property Collateral, including existing patents, which are deemed by Secured Creditors to be in danger of losing economic value by operation of law (e.g., patents requiring renewal fees), and the Trustee shall endeavor to liquidate the listed intellectual property Collateral in as expeditious a manner as is practicable;

    b. *Kentucky.* One or more Motions to Sell or Motions to Employ Auctioneer for sale of all or part of the non-intellectual property Collateral located in Kentucky to be filed with the bankruptcy court within 90 days from the Petition Date;

    c. *Other States.* One or more Motions to Sell or Motions to Employ Auctioneer for sale of all or part of the remaining non-intellectual and non-accounts receivable Collateral to be filed with the bankruptcy court within 120 days from the Petition Date; and

    d. *Accounts Receivable.* Collection and receipt of accounts receivable Collateral (excluding, however, the accounts receivable proceeds collected and deposited in Amegy Bank, N.A. through and including the Effective Date, referenced in subparagraph 3.a below) to be conducted by the Trustee for a period of 180 days from the Petition Date. Within ten (10) business days after expiration of this period, pursuant to 11 U.S.C. §725,

1967044-1:TSSLLC:0002


EXHIBIT A

the Trustee shall transfer to the Secured Creditors by non-recourse assignment, without representation or warranty, the remaining uncollected accounts receivable Collateral (the "Remaining A/R"), along with any non-privileged books and records of the Debtor pertaining to the Remaining A/R that are not deemed necessary by the Trustee for administration of the estate; and shall allow the Secured Creditors access to inspect and copy, at their sole cost and expense, any non-abandoned, non-privileged books and records of the Debtor pertaining to the Remaining A/R reasonably necessary to pursue collection thereof.

2. *Methods of Disposition.* The Trustee agrees to solicit input from and consider suggestions by the Secured Creditors regarding the method(s) of sale of the Collateral. By way of example, but not of limitation, Debtor had distinct businesses and business lines, e.g., hammers and bits, water, etc. Prospective buyers of certain assets may not be prospective buyers for the whole, so the Trustee expects to benefit from input and suggestions supplied by the Secured Creditors. The Secured Creditors agree not to contest any application to sell Collateral so long as the sale is in a commercially reasonable manner, including by public auction.

3. *Compromise of Debt.* In connection with this Liquidation Agreement, the Trustee has been provided with access to records deemed sufficient by the Trustee to evaluate the (i) validity and priority of the debts claimed by the Secured Creditors to be owed to them by Debtor, and (ii) characterization of debt versus equity. The Trustee and the Secured Parties agree to compromise any dispute or potential dispute between them on these two issues as follows:

   a. *STVF1 Debt Acquired from Amegy Bank, N.A.* Debt owed by the Debtor to Amegy Bank, N.A. ("Amegy"), which has been duly assigned to STVF1, is valid debt in an amount not to exceed $3,243,578.06, reduced, however, by amounts collected from accounts receivable of the Debtor actually received in good funds by Amegy or its successor in interest through the Effective Date and actually delivered to STVF1 after relief from the automatic stay is granted, in partial satisfaction of the Amegy debt assigned to STVF1, which collected accounts receivable amount through the Effective Date is in the agreed amount of $368,472.61. It is contemplated that STVF1 will seek relief from the automatic stay to allow it to foreclose or set off this amount of collected and applied accounts receivable through the Effective Date. The Trustee agrees not to oppose any such motion. To the extent perfected by filing with the Texas Secretary of State, or duly perfected under otherwise applicable law governing perfection of its security interests, and subject only to superior liens, if any, of taxing authorities that hold perfected liens on such collateral for unpaid taxes, the Amegy debt, as acquired by STVF1, is secured by a first lien on collateral described in the UCC Financing Statement filed with the Texas Secretary of State under filing number 08-

0028193304 or other instruments or methods of perfection that properly perfect those security interests; and

b. *TSS Holdco Debt.* The alleged TSS Holdco debt is agreed to be (i) valid debt in the amount of $5 million, and, to the extent perfected by filing with the Texas Secretary of State, or duly perfected under otherwise applicable law governing perfection of its security interests, is secured by (a) a second lien on non-intellectual property Collateral, and (b) a first lien on intellectual property Collateral, both categories of Collateral *(a)* and *(b)* being those assets described in the UCC Financing Statement filed with the Texas Secretary of State under filing number 06-0040277985, the filing in the United States Patent and Trademark Office, or other instruments or methods of perfection that properly perfect those security interests (subject, however, only to superior liens, if any, of taxing authorities that hold perfected liens on such collateral for unpaid taxes and Amegy Bank's prior perfected security interest); (ii) valid unsecured debt in the amount of $3,271,216.31 allowed in the same priority as the allowed claims of other general unsecured creditors; and (iii) with the remainder of the total TSS Holdco debt that is not paid as secured debt or unsecured debt on par with other general unsecured creditors (approximating $12.5 million of the total) to be allowed as an unsecured claim subordinated to the claims of other general unsecured creditors.

c. *No Grant or Perfection of Security Interest.* Nothing in this Liquidation Agreement or the compromise of debt set forth herein shall be construed to grant or perfect any security interest not properly and unavoidably perfected as of April 19, 2011. Likewise, nothing in this Liquidation Agreement or the compromise of debt set forth herein shall be construed as a waiver by the Trustee of the right to challenge such perfection, all of which rights are expressly reserved.

4. *Waiver of Right to Seek Recharacterization; State Law Rights of Secured Creditors.* Subject to bankruptcy court approval, the agreement in paragraph 3 will eliminate and constitute a waiver by the Trustee of her right and ability to challenge the validity, priority, or extent, and a waiver of her right and ability to seek recharacterization of debt to equity, with respect to the debt of Amegy, STVF1, and TSS Holdco in the amounts and priorities set forth in paragraph 3. Upon expiration of the time periods noted in paragraph 1 above (as may be extended by agreement), the automatic stay shall lift as to Secured Creditors with respect to the designated Collateral to enable them to exercise their state law rights and remedies. Nothing herein shall prevent the Secured Creditors from earlier exercising such rights on Collateral that has been abandoned by the Trustee. Likewise, nothing herein shall prevent the Secured Creditors from earlier filing a motion for relief from the automatic stay with respect to any Collateral, nor shall anything herein prevent the Trustee from opposing such relief (provided, however, it is agreed that the Trustee shall not oppose relief from the

automatic stay to be sought by STVF1 with respect to accounts receivable proceeds collected and deposited in Amegy Bank, N.A. through and including the Effective Date, referenced in subparagraph 3.a above).

5. *Bank Accounts.* The Trustee will maintain at least the following separate bank accounts:

   a. *Collateral Account.* An account into which she will deposit all proceeds arising from use, sale, lease or collection of Collateral, and shall deposit therein, and not commingle with any other funds, only the proceeds from the use, sale, lease or collection of Collateral (the "Collateral Account"); and

   b. *General Account.* An account into which she will deposit all other funds received by the bankruptcy estate, including but not limited to the proceeds or recovery of any Chapter 5 claims or causes of action and the proceeds of sale of assets other than the Collateral (the "General Account").

6. *No Security Interest in General Account.* The Secured Creditors agree they have no security interest in, or priority claim against, funds properly in the General Account.

7. *Collateral Administrative Expenses.* "Collateral Administrative Expenses" means:

   (i) The commission or compensation allowed to the Trustee pursuant to 11 U.S.C. §§326 and 330 attributable to gross receipts from the collections or sales of Collateral;

   (ii) Commissions or compensation allowed to brokers or auctioneers in connection with sales of Collateral; and

   (iii) All other expenses incurred in connection with the collection or sale of the Collateral, such as storage, insurance, closing costs, advertising expenses, and professional fees associated with obtaining court approval to sell the Collateral. It is anticipated that the Secured Creditors may advance funds for post-petition rent, insurance or other costs in connection with the preservation of the Collateral, and that funds actually advanced by the Secured Creditors may be included in Collateral Administrative Expenses.

8. *Excluded Services.* "Excluded Services" means services of professionals employed by the bankruptcy estate for (i) investigation and prosecution of Chapter 5 claims or causes of action; and (ii) the sale of assets other than the Collateral. The professionals employed by the bankruptcy estate will keep separate time records for Excluded Services.

9. *Administrative Taxes.* "Administrative Taxes" means any tax liability of the bankruptcy estate entitled to priority under 11 U.S.C. §507(a)(2) and allowed under 11 U.S.C. §503(b).

10. *Other Administrative Expenses.* "Other Administrative Expense" means any cost or expense of administration of the bankruptcy case entitled to priority under 11 U.S.C. §507(a)(2) and allowed under 11 U.S.C. §503(b), specifically including but not limited to attorneys' and accountants' fees, but specifically excluding (i) fees for Excluded Services, (ii) Collateral Administrative Expenses, and (iii) Administrative Taxes.

11. *Subordination to Collateral Administrative Expenses and Administrative Taxes.* The Secured Creditors agree to subordinate their security interests to the Collateral Administrative Expenses and the Administrative Taxes, and agree to allow payment of the Collateral Administrative Expenses and the Administrative Taxes from the Collateral Account.

12. *Subordination to Other Administrative Expenses.* Up to an aggregate limit not to exceed $65,000, the Secured Creditors agree to subordinate their security interests to all allowed Other Administrative Expenses, and agree to allow payment of the Other Administrative Expenses from the Collateral Account, up to such limit.

13. *No Waiver of Right to Object.* Neither the Trustee nor the Secured Creditors waive their right to object to the allowance of any application for a Collateral Administrative Expense, Administrative Tax, or Other Administrative Expense.

14. *Disposition of Net Proceeds.* At the conclusion of the Debtor's bankruptcy case, the funds then on deposit in the Collateral Account will be allocated between the Secured Creditors and the bankruptcy estate as follows:

   a. The amount of any accrued but unpaid Other Administrative Expenses (up to the cap of $65,000), Collateral Administrative Expenses and/or Administrative Taxes will be deducted from amount of funds then on deposit in the Collateral Account to arrive at the amount of the "Net Collateral Account Funds";

   b. As partial payment on their secured claim, the Secured Creditors will receive 80% of the first $3.5 million of the Net Collateral Account Funds (the "First Tier"); the bankruptcy estate will receive 20% of the First Tier;

   c. As partial payment on their secured claim, the Secured Creditors will receive 70% of the Net Collateral Account Funds in excess of $3.5 million but not in excess of $6 million (the "Second Tier"); the bankruptcy estate will receive 30% of the Second Tier;

    d.    Up to the balance of their secured claim remaining after application of the payments received under the First and Second Tiers, the Secured Creditors will receive 60% of the Net Collateral Account Funds in excess of $6 million (the "Third Tier"); the bankruptcy estate will receive 40% of the Third Tier; and

    e.    After payment in full of their secured claim, the Secured Creditors will receive no further amounts from the Net Collateral Account Funds (except indirectly as they will share pro rata as unsecured creditors of the bankruptcy estate in accordance with section 726 of the Bankruptcy Code).

15. Except as specified herein, upon entry of an Order of the bankruptcy court approving this Liquidation Agreement and the compromise of debt herein, the Secured Creditors will be deemed to have waived all claims against the bankruptcy estate other than their right to receive funds from the Collateral Account under the above terms, all funds in the Amegy account described in subparagraph 3.a above, their pro rata share of distributions to holders of allowed general unsecured claims, and their allowed claims.

16. Nothing in this Liquidation Agreement or the compromise between the Trustee and the Secured Creditors shall (i) create rights in favor of any other party, (ii) waive or imply waiver of claims by the Secured Creditors or the Trustee against any other party, or (iii) imply allowance or agreement to allow the claim of any other party, including but not limited to Kevin Smith. The Trustee and the Secured Creditors expressly retain all rights to challenge the claim of any other party and/or to seek recharacterization of any other party's alleged debt as equity, including but not limited to Kevin Smith.

17. This Liquidation Agreement between the Secured Creditors and the Trustee is subject to approval of the bankruptcy court.

Date: _____, 2011

                                                                                      Janet S. Northrup, Chapter 7 Trustee of the Bankruptcy Estate of Total Separation Solutions, L.L.C., and not in her individual capacity

SHELL TECHNOLOGY VENTURES FUND 1 B.V.,
a Netherlands registered company

By:   KENDA CAPITAL, B.V., its sole managing director

    By: _____
    Name: _____
    Title: _____
    Date: _____, 2011

TOTAL SEPARATION SOLUTIONS HOLDINGS LLC,
a Delaware limited liability company

By: _____
Name: _____
Title: _____
Date: _____, 2011

## SERVICE LIST

Debtor
Total Separation Solutions, L.L.C.
11050 West Little York Road, Ste. G
Houston, TX 77041

Debtor's Counsel
Charles E. Long
MehaffyWeber, PC
One Allen Center
500 Dallas, Suite 1200
Houston, TX 77002

Chapter 7 Trustee
Janet S. Casciato-Northrup
Hughes Watters and Askanase
333 Clay, 29th Floor
Houston, TX 77002

U.S. Trustee
US Trustee
Office of the US Trustee
515 Rusk Ave, Ste 3516
Houston, TX 77002

Creditors
AT&T - KY
PO Box 105262
Atlanta, GA 30348-5262

Abby Services, Inc.
2 Deblasio Drive
Canonsburg, PA 15317

Airgas Mid America
PO Box 802615
Chicago, IL 60680-2615

Alison Fuentes Dodge Executrix
of the Estate of Le
6 Buccaneer Court
Greeensboro, NC 27455

Allegheny Power
800 Cabin Hill Drive
Greenburg, PA 15606-001

Amegy Bank of Texas
4400 Post Oak Parkway
Houston, TX 77056

Anita Henry, RTA
PO Box 203908
Houston, TX 77216-3908

Appalachian Power
PO Box 24413
Canton, OH 44701-4413

Appalachian Wireless
PO Box 630734
Cincinnati, OH 45263-0734

Arvest Dodge
PO Box 1729
Lowell, AK 72745-1726

Bioblend
2439 Reeves Road
Joliet, IL 60436

Burkes Oilfield Services Inc.
PO Box 476
Quinton, OK 74561

C&J Gasfield Services Inc.
PO Box 476
Clintwood, VA 24228

CINTAS - WV #525
PO Box 636165
Cincinnati, OH 45263-0734

CST
PO Box 8612
Grangerland, TX 77302

Caterpillar Access
PO Box 905229
Charlotte, NC 28290

CheckPoint Process Pumps & Systems
21356 Marion Lane
Mandeville, LA 70471

Cintas #311
PO Box 630910
Cincinnati, OH 45263-0734

Cintas First Aid & Safety
4125 Winchester Ave
Ashland, KY 41101

Cleaveland Brothers Equipment Co, Inc.
PO Box 417094
Boston, MA 02241-7094

Culligan
PO Box 689
Lowell, AK 72745-1726

D-A Lubricant Company
PO Box 769
Labanon, IN 46502

DCT Industrial OP Ptnshp LP
Department 1379
Denver, CO 80256

Dirk Cole
1530 Porter Street
Waynesburg, PA 15370

Don Sumners
1001 Preston
Houston, TX 77210-4089

Donald Baetz
PO Box 1083
Poteau, OK 74953

Economy Polymers and Chemicals
PO Box 41027
Houston, TX 77241-1027

FedEx
PO Box 660481
Dallas, TX 75266-0481

Ford Credit
PO Box 650575
Dallas, TX 75265-0575

Four Seasons Business Park
5825 W Sam Houston Parkway
Houston, TX 77041

Green Country Sanitation
PO Box D
Poteau, OK 74953

Harris County Alarm Detail
9418 Jensen Drive, Suite A
Houston, TX 77093-6821

J.J. Keller & Associates
PO Box 672
Neenah, Wisconsin 54957-0672

Kenda Capital, LLC
2700 Post Oak Blvd, Suite 1750
Houston, TX 77056

Kentucky Crystal Water, Inc.
PO Box 160
Ashcamp, KY 41512

Kentucky Power Company
PO Box 24401
Canton, OH 44701-4401

Kevin Smith
720 Highland Street
Houston, TX 77009

1947176-1:TSSLLC:0002

Kinzer Investment Realty
PO Box 460
Allen, KY 41601

M&M Welding, Inc
6173 State, Route 850
Hippo, KY 41653

Magnablend
326 N. Grand Avenue
Waxahachie, TX 75165

Melodi Bell
5521 Ohio River Road
Point Pleasant, WV 25550

National Oilwell Varco
PO Box 200838
Dallas, TX 75320-0838

National Pump & Compressor, Ltd
PO Box 21160
Beaumont, TX 77720

PEC/Premier Safety Mgmt.
233 General Patton Ave.
Mandeville, LA 70471

Petty Oilfield Services
PO Box 437
Hamlin, WV 25523

Producers Supply Co.
121 Kiwi Drive
Waynesburg, PA 15370

Purvis Industries
PO Box 540757
Dallas, TX 75354-0757

Ramada Plaza Hotel Charleston
400 2nd Avenue
So. Charleston, West VA 25303

Republic Waste Services
PO Box 78829
Phoenix, AZ 85062-8829

Royal Purple, Ltd
PO Box 4346
Houston, TX 77210-4346

Shannon, Martin, Finkelstein &
Alvarado
2400 Two Houston Center
Houston, TX 77010

Shell Technology Ventures Fund 1 B.V.
Lange Kleiweg 60-F
Rijswijk, Netherlands 2288GK

Simons Petroleum
210 Park Avenue, Suite 1800
Oklahoma City, OK 73102

Smith
PO Box 200760
Dallas, TX 75320-0760

Sooner Energy Services
PO Box 201801
Dallas, TX 75320-1801

Southern Water and Sewer District
PO Box 610
McDowell, KY 41647-0610

SuddenLink
PO Box 742535
Cincinnati, OH 45274-2535

TAMCO Capital Corporation
PO Box 6434
Carol Stream, IL 60197-6434

TLC Office Systems
8711 Fallbrook
Houston, TX 77064

1947176-1:TSSLLC:0002

TLC Tonerland, L.P
PO Box 660831
Dallas, TX 75266-0831

Terminix Commercial
PO Box 742592
Cincinnati, OH 45274-2592

The Aldridge Company
PO Box 56506
Houston, TX 77256

The Sanitary Board of South Charleston
PO Box 8336
South Charleston, WV 25303

Total Separation Solutions Holdings LLC
2700 Post Oak Blvd, Suite 1750
Houston, TX 77056

Toyota Financial Services
PO Box 650686
Dallas, TX 75265-0575

Turm Oil Inc.
111 Dodds Road
Butler, Pennyslvania 16002

Tyler Mountain Water Co., Inc.
PO Box 909
Nitro, West VA 25143-0909

Veolia ES Solid Waste of PA, Inc. L6
PO Box 6484
Carol Stream, IL 60197-6434

Virginia Department of Taxation
PO Box 26626
Richmond, VA 23261

Walker CAT
PO Box 2427
Charleston, WV 25329

Waste Connections of KY
PO Box 808
Lily, KY 40740-0808

Waste Management of
West Virginia, Inc.
PO Box 13648
Philadelphia, PA 19101-3648

Weatherford Engineered Chemistry
PO Box 203202
Houston, TX 77214

West Virginia American Water
PO Box 371880
Pittsburgh, PA 15250-7880

Windstream
PO Box 9001908
Louisville, KY 40290

Zions Credit Corp
PO Box 26536
Salt Lake City, UT 84110

eLynx
PO Box 21228
Dept 243
Tulsa, OK 74121-1228

Parties Requesting Notice
Gretchen McCord
Nathan Sommers Jacobs
2800 Post Oak, 61st Floor
Houston, Texas 77056

John P. Dillman
Linebarger Goggan et al.
PO Box 3064
Houston, TX 77253-3064

1947176-1:TSSLLC:0002