IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No.: 11-33443-H3-7 |
| | § | |
| TOTAL SEPARATION SOLUTIONS, LLC | § | (Chapter 7) |
| | § | |
| Debtor. | § | |

### ORDER GRANTING AMENDED EMERGENCY MOTION TO
### (i) APPROVE LIQUIDATION AGREEMENT AND
### (ii) COMPROMISE CONTROVERSY WITH SECURED CREDITORS

The court has considered the *Emergency Motion to (i) Approve Liquidation Agreement and (ii) Compromise Controversy With Secured Creditors* (the "Motion") filed by Trustee Janet S. Northrup (the "Trustee").

The court has considered the proposed Liquidation Agreement attached to the Motion as Exhibit "A" and the compromise set forth therein, and the Trustee's analysis of the factors in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). The Liquidation Agreement and the compromise set forth therein appear to be beneficial to the estate and its creditors. It is, therefore

ORDERED that the Motion is GRANTED. It is further

ORDERED that the Liquidation Agreement between the Trustee, Shell Technology Venture Fund 1, B.V., and Total Separation Solutions Holdings, L.L.C. is approved in substantially the form attached to this Order as Exhibit "A" (the "Liquidation Agreement"). It is further

ORDERED that the agreement for the payment of May and June 2011 rents using funds on deposit at Amegy Bank on which Shell Technology Venture Fund 1, B.V. holds a valid lien is APPROVED. It is further

ORDERED that the Trustee is authorized to execute all documents and take all other actions necessary to carry out the terms of the Liquidation Agreement. It is further

ORDERED that nothing in this Order shall be construed to compromise any issue or dispute or to affect any obligation between the Trustee and any other individuals or entities.

SIGNED this date _____, 2011.

_____
UNITED STATES BANKRUPTCY JUDGE

# AGREEMENT TO LIQUIDATE COLLATERAL

Subject to bankruptcy court approval, the Effective Date of this Agreement is May 17, 2011 (the "Effective Date"). Shell Technology Ventures Funds 1 B.V., a Netherlands registered company ("STVF1"), as successor by assignment from Amegy Bank, N.A., and Total Separation Solutions Holdings LLC, a Delaware limited liability company ("TSS Holdco"), and/or their successors and assigns (collectively the "Secured Creditors") agree with the Janet Northrup, Trustee (the "Trustee") of the bankruptcy estate of Total Separation Solutions, L.L.C. (the "Debtor") as follows:

1. *Liquidation of Collateral.* Secured Creditors agree to allow the Trustee to sell, free and clear of all liens, claims, charges, encumbrances and interests under 11 U.S.C. §363, all or any part of the collateral in which the Secured Creditors claim a security interest (the "Collateral") according to the following, or such other deadlines as the Secured Creditors and the Trustee may mutually agree, provided, however, nothing in this Liquidation Agreement shall be construed to impose an obligation on the Trustee to undertake to dispose of any Collateral which has been or will be abandoned by the Trustee:

    a. *Intellectual Property.* One or more Motions to Sell all or part of the intellectual property Collateral (wherever located) to be filed with the bankruptcy court within 120 days from the Petition Date; provided however the Secured Creditors shall provide the Trustee with a list of intellectual property Collateral, including existing patents, which are deemed by Secured Creditors to be in danger of losing economic value by operation of law (e.g., patents requiring renewal fees), and the Trustee shall endeavor to liquidate the listed intellectual property Collateral in as expeditious a manner as is practicable;

    b. *Kentucky.* One or more Motions to Sell or Motions to Employ Auctioneer for sale of all or part of the non-intellectual property Collateral located in Kentucky to be filed with the bankruptcy court within 90 days from the Petition Date;

    c. *Other States.* One or more Motions to Sell or Motions to Employ Auctioneer for sale of all or part of the remaining non-intellectual and non-accounts receivable Collateral to be filed with the bankruptcy court within 120 days from the Petition Date; and

    d. *Accounts Receivable.* Collection and receipt of accounts receivable Collateral (excluding, however, the accounts receivable proceeds collected and deposited in Amegy Bank, N.A. through and including the Effective Date, referenced in subparagraph 3.a below) to be conducted by the Trustee for a period of 180 days from the Petition Date. Within ten (10) business days after expiration of this period, pursuant to 11 U.S.C. §725,

1967044-1:TSSLLC:0002



the Trustee shall transfer to the Secured Creditors by non-recourse assignment, without representation or warranty, the remaining uncollected accounts receivable Collateral (the "Remaining A/R"), along with any non-privileged books and records of the Debtor pertaining to the Remaining A/R that are not deemed necessary by the Trustee for administration of the estate; and shall allow the Secured Creditors access to inspect and copy, at their sole cost and expense, any non-abandoned, non-privileged books and records of the Debtor pertaining to the Remaining A/R reasonably necessary to pursue collection thereof.

2. *Methods of Disposition.* The Trustee agrees to solicit input from and consider suggestions by the Secured Creditors regarding the method(s) of sale of the Collateral. By way of example, but not of limitation, Debtor had distinct businesses and business lines, e.g., hammers and bits, water, etc. Prospective buyers of certain assets may not be prospective buyers for the whole, so the Trustee expects to benefit from input and suggestions supplied by the Secured Creditors. The Secured Creditors agree not to contest any application to sell Collateral so long as the sale is in a commercially reasonable manner, including by public auction.

3. *Compromise of Debt.* In connection with this Liquidation Agreement, the Trustee has been provided with access to records deemed sufficient by the Trustee to evaluate the (i) validity and priority of the debts claimed by the Secured Creditors to be owed to them by Debtor, and (ii) characterization of debt versus equity. The Trustee and the Secured Parties agree to compromise any dispute or potential dispute between them on these two issues as follows:

   a. *STVF1 Debt Acquired from Amegy Bank, N.A.* Debt owed by the Debtor to Amegy Bank, N.A. ("Amegy"), which has been duly assigned to STVF1, is valid debt in an amount not to exceed $3,243,578.06, reduced, however, by amounts collected from accounts receivable of the Debtor actually received in good funds by Amegy or its successor in interest through the Effective Date and actually delivered to STVF1 after relief from the automatic stay is granted, in partial satisfaction of the Amegy debt assigned to STVF1, which collected accounts receivable amount through the Effective Date is in the agreed amount of $368,472.61. It is contemplated that STVF1 will seek relief from the automatic stay to allow it to foreclose or set off this amount of collected and applied accounts receivable through the Effective Date. The Trustee agrees not to oppose any such motion. To the extent perfected by filing with the Texas Secretary of State, or duly perfected under otherwise applicable law governing perfection of its security interests, and subject only to superior liens, if any, of taxing authorities that hold perfected liens on such collateral for unpaid taxes, the Amegy debt, as acquired by STVF1, is secured by a first lien on collateral described in the UCC Financing Statement filed with the Texas Secretary of State under filing number 08-

0028193304 or other instruments or methods of perfection that properly perfect those security interests; and

b. *TSS Holdco Debt.* The alleged TSS Holdco debt is agreed to be (i) valid debt in the amount of $5 million, and, to the extent perfected by filing with the Texas Secretary of State, or duly perfected under otherwise applicable law governing perfection of its security interests, is secured by (a) a second lien on non-intellectual property Collateral, and (b) a first lien on intellectual property Collateral, both categories of Collateral (a) and (b) being those assets described in the UCC Financing Statement filed with the Texas Secretary of State under filing number 06-0040277985, the filing in the United States Patent and Trademark Office, or other instruments or methods of perfection that properly perfect those security interests (subject, however, only to superior liens, if any, of taxing authorities that hold perfected liens on such collateral for unpaid taxes and Amegy Bank's prior perfected security interest); (ii) valid unsecured debt in the amount of $3,271,216.31 allowed in the same priority as the allowed claims of other general unsecured creditors; and (iii) with the remainder of the total TSS Holdco debt that is not paid as secured debt or unsecured debt on par with other general unsecured creditors (approximating $12.5 million of the total) to be allowed as an unsecured claim subordinated to the claims of other general unsecured creditors.

c. *No Grant or Perfection of Security Interest.* Nothing in this Liquidation Agreement or the compromise of debt set forth herein shall be construed to grant or perfect any security interest not properly and unavoidably perfected as of April 19, 2011. Likewise, nothing in this Liquidation Agreement or the compromise of debt set forth herein shall be construed as a waiver by the Trustee of the right to challenge such perfection, all of which rights are expressly reserved.

4. *Waiver of Right to Seek Recharacterization; State Law Rights of Secured Creditors.* Subject to bankruptcy court approval, the agreement in paragraph 3 will eliminate and constitute a waiver by the Trustee of her right and ability to challenge the validity, priority, or extent, and a waiver of her right and ability to seek recharacterization of debt to equity, with respect to the debt of Amegy, STVF1, and TSS Holdco in the amounts and priorities set forth in paragraph 3. Upon expiration of the time periods noted in paragraph 1 above (as may be extended by agreement), the automatic stay shall lift as to Secured Creditors with respect to the designated Collateral to enable them to exercise their state law rights and remedies. Nothing herein shall prevent the Secured Creditors from earlier exercising such rights on Collateral that has been abandoned by the Trustee. Likewise, nothing herein shall prevent the Secured Creditors from earlier filing a motion for relief from the automatic stay with respect to any Collateral, nor shall anything herein prevent the Trustee from opposing such relief (provided, however, it is agreed that the Trustee shall not oppose relief from the

automatic stay to be sought by STVF1 with respect to accounts receivable proceeds collected and deposited in Amegy Bank, N.A. through and including the Effective Date, referenced in subparagraph 3.a above).

5. *Bank Accounts.* The Trustee will maintain at least the following separate bank accounts:

   a. *Collateral Account.* An account into which she will deposit all proceeds arising from use, sale, lease or collection of Collateral, and shall deposit therein, and not commingle with any other funds, only the proceeds from the use, sale, lease or collection of Collateral (the "Collateral Account"); and

   b. *General Account.* An account into which she will deposit all other funds received by the bankruptcy estate, including but not limited to the proceeds or recovery of any Chapter 5 claims or causes of action and the proceeds of sale of assets other than the Collateral (the "General Account").

6. *No Security Interest in General Account.* The Secured Creditors agree they have no security interest in, or priority claim against, funds properly in the General Account.

7. *Collateral Administrative Expenses.* "Collateral Administrative Expenses" means:

   (i) The commission or compensation allowed to the Trustee pursuant to 11 U.S.C. §§326 and 330 attributable to gross receipts from the collections or sales of Collateral;

   (ii) Commissions or compensation allowed to brokers or auctioneers in connection with sales of Collateral; and

   (iii) All other expenses incurred in connection with the collection or sale of the Collateral, such as storage, insurance, closing costs, advertising expenses, and professional fees associated with obtaining court approval to sell the Collateral. It is anticipated that the Secured Creditors may advance funds for post-petition rent, insurance or other costs in connection with the preservation of the Collateral, and that funds actually advanced by the Secured Creditors may be included in Collateral Administrative Expenses.

8. *Excluded Services.* "Excluded Services" means services of professionals employed by the bankruptcy estate for (i) investigation and prosecution of Chapter 5 claims or causes of action; and (ii) the sale of assets other than the Collateral. The professionals employed by the bankruptcy estate will keep separate time records for Excluded Services.

9.  *Administrative Taxes.* "Administrative Taxes" means any tax liability of the bankruptcy estate entitled to priority under 11 U.S.C. §507(a)(2) and allowed under 11 U.S.C. §503(b).

10. *Other Administrative Expenses.* "Other Administrative Expense" means any cost or expense of administration of the bankruptcy case entitled to priority under 11 U.S.C. §507(a)(2) and allowed under 11 U.S.C. §503(b), specifically including but not limited to attorneys' and accountants' fees, but specifically excluding (i) fees for Excluded Services, (ii) Collateral Administrative Expenses, and (iii) Administrative Taxes.

11. *Subordination to Collateral Administrative Expenses and Administrative Taxes.* The Secured Creditors agree to subordinate their security interests to the Collateral Administrative Expenses and the Administrative Taxes, and agree to allow payment of the Collateral Administrative Expenses and the Administrative Taxes from the Collateral Account.

12. *Subordination to Other Administrative Expenses.* Up to an aggregate limit not to exceed $65,000, the Secured Creditors agree to subordinate their security interests to all allowed Other Administrative Expenses, and agree to allow payment of the Other Administrative Expenses from the Collateral Account, up to such limit.

13. *No Waiver of Right to Object.* Neither the Trustee nor the Secured Creditors waive their right to object to the allowance of any application for a Collateral Administrative Expense, Administrative Tax, or Other Administrative Expense.

14. *Disposition of Net Proceeds.* At the conclusion of the Debtor's bankruptcy case, the funds then on deposit in the Collateral Account will be allocated between the Secured Creditors and the bankruptcy estate as follows:

    a.  The amount of any accrued but unpaid Other Administrative Expenses (up to the cap of $65,000), Collateral Administrative Expenses and/or Administrative Taxes will be deducted from amount of funds then on deposit in the Collateral Account to arrive at the amount of the "Net Collateral Account Funds";

    b.  As partial payment on their secured claim, the Secured Creditors will receive 80% of the first $3.5 million of the Net Collateral Account Funds (the "First Tier"); the bankruptcy estate will receive 20% of the First Tier;

    c.  As partial payment on their secured claim, the Secured Creditors will receive 70% of the Net Collateral Account Funds in excess of $3.5 million but not in excess of $6 million (the "Second Tier"); the bankruptcy estate will receive 30% of the Second Tier;

    d.    Up to the balance of their secured claim remaining after application of the payments received under the First and Second Tiers, the Secured Creditors will receive 60% of the Net Collateral Account Funds in excess of $6 million (the "Third Tier"); the bankruptcy estate will receive 40% of the Third Tier; and

    e.    After payment in full of their secured claim, the Secured Creditors will receive no further amounts from the Net Collateral Account Funds (except indirectly as they will share pro rata as unsecured creditors of the bankruptcy estate in accordance with section 726 of the Bankruptcy Code).

15.    Except as specified herein, upon entry of an Order of the bankruptcy court approving this Liquidation Agreement and the compromise of debt herein, the Secured Creditors will be deemed to have waived all claims against the bankruptcy estate other than their right to receive funds from the Collateral Account under the above terms, all funds in the Amegy account described in subparagraph 3.a above, their pro rata share of distributions to holders of allowed general unsecured claims, and their allowed claims.

16.    Nothing in this Liquidation Agreement or the compromise between the Trustee and the Secured Creditors shall (i) create rights in favor of any other party, (ii) waive or imply waiver of claims by the Secured Creditors or the Trustee against any other party, or (iii) imply allowance or agreement to allow the claim of any other party, including but not limited to Kevin Smith. The Trustee and the Secured Creditors expressly retain all rights to challenge the claim of any other party and/or to seek recharacterization of any other party's alleged debt as equity, including but not limited to Kevin Smith.

17.    This Liquidation Agreement between the Secured Creditors and the Trustee is subject to approval of the bankruptcy court.

Date: _____, 2011

    _____
    Janet S. Northrup, Chapter 7 Trustee of the Bankruptcy Estate of Total Separation Solutions, L.L.C., and not in her individual capacity

SHELL TECHNOLOGY VENTURES FUND 1 B.V.,
a Netherlands registered company

By:    KENDA CAPITAL, B.V., its sole managing director

    By: _____
    Name: _____
    Title: _____
    Date: _____, 2011

TOTAL SEPARATION SOLUTIONS HOLDINGS LLC,
a Delaware limited liability company


By: _____
Name: _____
Title: _____
Date: _____, 2011